UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61134-CIV-ALTONAGA/Simonton

**BASIL JENNINGS**,

    Plaintiff,
vs.

**WALGREEN CO.**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Walgreen Co.'s ("Walgreens['s]") Motion for Summary Judgment ("Motion") [ECF No. 44], filed on March 4, 2011. In the Motion, Walgreens seeks summary judgment on Plaintiff, Basil Jennings's ("Jennings['s]") claims of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e(1)–(17), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01-.11 (2009). The Court has considered the parties' written submissions and the applicable law.

### I. BACKGROUND[1]

This case concerns Jennings's termination from his position at one of Walgreens' retail stores. Jennings is an African-American male who was employed by Walgreens beginning in November 1995. (*See* Def.'s Statement of Undisputed Material Facts ("SUMF") ¶¶ 1–2 [ECF No. 45]). Jennings worked at Walgreens, first as a Management Trainee and later as an Assistant Manager, until his termination on June 6, 2008. (*See id.* ¶ 2, 39; Pl.'s Statement of Disputed Issues of Material Facts ("SDIMF") ¶ 2 [ECF No. 70]). Jennings claims he was

---

[1] Unless otherwise noted, the facts are undisputed.

Case No. 10-61134-CIV-ALTONAGA/Simonton

terminated because of his membership in a class action lawsuit against Walgreens. Walgreens maintains it terminated Jennings based on his continued violation of Walgreens' policy against sexual harassment.

### A. Walgreens' Harassment Policy

Walgreens' Policy Against Harassment and Discrimination ("the Policy") provides in pertinent part as follows:

> Walgreens' policy strictly prohibits any harassing conduct that affects an individual's employment, interferes with an individual's work performance, or creates an intimidating, hostile, or offensive working environment, even if the harassing behavior does not rise to the level of legally actionable conduct. Such harassment on the part of supervisors or employees will not be tolerated.
>
> Anyone found to have violated Walgreens Policy Against Harassment and Discrimination may be subject to serious disciplinary action up to and including termination of employment.

("Policy." Ex. 1 [ECF No. 69]). Jennings admits he reviewed this Policy and was in charge of enforcing it as well. (*See* SDIMF ¶ 5).

### B. Accusations Against Jennings

In February 2007, Jennings was working at Walgreens' Store Number 1389 under the supervision of Store Manager Maribel Torres ("Manager Torres"). (*See id.* ¶ 6). During that time, Janay Wise ("Wise"), an employee of that store, reported to Walgreens' Loss Prevention Department that Jennings had made several inappropriate comments and advances toward her. (*See id.*). According to Walgreens, after being informed of Wise's allegations, Meryl Felsen ("Felsen"), a Loss Prevention Supervisor, investigated the allegations, conducted interviews, and took statements from several employees including Jennings and Wise. (*See id.* ¶ 7; "Felsen Aff." ¶ 9 [ECF 63-1]). According to Felsen, Wise reported Jennings made inappropriate

2

Case No. 10-61134-CIV-ALTONAGA/Simonton

comments such as "you are the devil, because you have a blue rim around your eye" and "you are going to hell because you don't like people" and claimed Jennings was constantly "checking [her] out." (SUMF ¶ 8; *see* Felsen Aff. ¶ 10). During his interview with Felsen, Jennings denied the allegations against him. (*See* SUMF ¶ 9).

As a result of the investigation, on March 15, 2007, Jennings was given a final written warning ("the First Final Warning") and was suspended by Manager Torres. (*Id.* ¶ 10). The First Final Warning, which Jennings signed, informed Jennings that his behavior "[was] a violation of [the] company['s] . . . Sexual Harassment policy." (*Id.* ¶ 11). The warning further advised that "any further incidents [would] result in immediate termination." (*Id.*).

Following the issuance of the First Final Warning, Jennings was transferred to Store Number 1412, managed by Daniel Aslan ("Manager Aslan"). (*See id.* ¶ 12). According to Walgreens, on or about September 20, 2007, Manager Aslan contacted Felsen regarding allegations of sexual harassment against Jennings made by two female employees, Elia Rodriguez ("Rodriguez") and Melissa Espinoza ("Espinoza"). (*See id.* ¶ 13). Felsen once again investigated the allegations and conducted interviews of the employees. (*See id.* ¶ 14; Felsen Aff. ¶ 18). According to Felsen, Espinoza reported that Jennings was "constantly checking her out," that he was "inappropriately watching her," and that "he asked her if she worked out and even asked her for a private session on the beach." (SUMF ¶ 15; *see* Felsen Aff. ¶ 19). Rodriguez reported "she felt uncomfortable working with Jennings, [and] there were several times she saw him inappropriately watching her and checking her out." (SUMF ¶ 16).

When Felsen interviewed Jennings, he "denied 'checking out' any female and stated that there is nobody worthy of going to the beach with." (*Id.* ¶ 18). He also stated "he would never

3

Case No. 10-61134-CIV-ALTONAGA/Simonton

ask an employee if she worked out and for a private session," and "that he felt the employees are liars and said they lied because he conducts bag checks on certain employees." (*Id.*; *see* Jennings Dep. 60:2–6, 17–22 [ECF No. 48]).  Felsen informed Jennings of the accusations against him, which were described in another final written warning ("the Second Final Warning").[2]  (*See* SUMF ¶ 19).  The Second Final Warning informed Jennings his behaviors "[were] in violation of the company's [Policy] and if there is another violation of the company policy it will result in immediate termination." (*Id.* ¶ 20).

Following the Second Final Warning, Jennings was suspended and transferred to Store Number 6404, which was managed by Store Manager Pamela Adamec ("Manager Adamec"). (*See id.* ¶¶ 29–30).  According to Walgreens, on or about May 16, 2008, Loss Prevention Supervisor Mike Buran was contacted regarding several allegations of sexual harassment against Jennings at Store Number 6404.  (*See id.* ¶ 31; "Buran Aff." ¶ 4 [ECF No. 50]).  Felsen once again conducted an investigation in which she interviewed employee Maria Alcantar ("Alcantar") who reported among other things "that Jennings (1) touched her (massaged her under her shirt, rubbing her neck and collarbone area), (2) locked her in his car one day when he was giving her a ride home, grabbed her shoulder and tried to kiss her[,] and (3) would keep her working late while sending other employees home." (SUMF ¶ 33; *see* Felsen Aff. ¶ 32). Jennings denied the allegations, but admitted to driving Alcantar home.  (*See* SUMF ¶ 35). Following Felsen's interview with Jennings, he was "suspended pending further review."  (*Id.*

---

[2] Jennings claims he did not sign the document, and, for purposes of summary judgment, Walgreens does not dispute this fact.  (*See id.* ¶ 24; SDIMF ¶ 21).

Case No. 10-61134-CIV-ALTONAGA/Simonton

¶ 37).

### C. Jennings's Termination

On or about June 6, 2008, Alex Palermo, the District Manager for the district in which Jennings worked, made the decision to terminate Jennings.  (*See id.* ¶ 3, 38; "Palermo Aff." ¶ 4 [ECF No. 51]).  That same day, Manager Adamec informed Jennings of his termination.  (*See id.* ¶ 39).  Shortly after his termination, Jennings filed a charge with the Equal Employment Opportunity Commission ("the EEOC") alleging retaliation.  (*See* SUMF ¶ 42).  In his charge, Jennings stated he felt he was terminated in retaliation for "'the fact that [he] would benefit from a Class Action Settlement now underway between the company and fellow employees.'"  (*Id.* ¶ 43).

On July 2, 2010, Jennings filed the Complaint [ECF No. 1], which alleges two counts: (1) retaliation under FCRA, and (2) retaliation under Title VII.  In the Complaint, Jennings claims he was terminated in retaliation for his involvement with the *Tucker, et al. v. Walgreen Co.* and *EEOC v. Walgreen Co.* class action lawsuits ("the Class Action").[3]  (*See* SUMF ¶ 48; Compl. ¶ 2).  Walgreens timely filed this Motion seeking summary judgment on both counts.

## II. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "[T]he

---

[3] The Class Action addressed alleged discrimination by Walgreens against African-American employees.  (*See* SDIMF ¶ 49).  Jennings received a settlement check on July 1, 2008 in connection with the settlement of the Class Action.  (*See* SUMF ¶ 61).

Case No. 10-61134-CIV-ALTONAGA/Simonton

Court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Hayes v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III. ANALYSIS[4]

In the Motion, Walgreens asserts it is entitled to summary judgment because there are no genuine issues of material fact as to Jennings's claims, and as a matter of law, Jennings's claims are unsupported by the evidence. (*See* Mot. 1). In his Complaint, Jennings alleges violations of Title VII and the FCRA on the basis of retaliation. (*See* Compl. ¶¶ 30–47 [ECF No. 1]). Specifically, Jennings alleges Walgreens retaliated against him because he was a class member and beneficiary of the Class Action against Walgreens. (*See id.* ¶¶ 32, 40).

"Retaliation is a separate offense under Title VII." *Meeks v. Computer Assocs. Int'l*, 15

---

[4] Because the FCRA is patterned after Title VII, the Eleventh Circuit has consistently applied case law interpreting Title VII to claims brought under the FCRA. *See, e.g., Wilbur v. Corr. Serv. Corp.*, 393 F.3d 1192, 1195 n. 1 (11th Cir. 2004); *Albra v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007). Accordingly, Jennings's FCRA claim is considered in conjunction with his Title VII claim, and the discussion of the Title VII claim applies equally to the FCRA claim.

6

F.3d 1013, 1021 (11th Cir. 1994). "Employers are prohibited from discriminating against employees who oppose the unlawful employment practices set out in Title VII or make charges of discrimination under the statute." *Mohamed v. Pub. Health Trust of Miami-Dade Cnty.*, No. 09-21235-CIV, 2010 WL 2844616, at *10 (S.D. Fla. Jul. 19, 2010) (citing 42 U.S.C. § 2000e-3(a)). "The employee need not prove the underlying claim of discrimination which led to her protest" in a retaliation claim. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989). "Instead, the issue is whether the employee was discriminated against by the employer because of the employee's reliance on Title VII's remedial measures." *Mohamed*, 2010 WL 2844616, at *11.

"In order to establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: (1) he or she engaged in statutorily protected expression; (2) he or she suffered an adverse employment action; and (3) there exists a causal link between the protected expression and the adverse action." *Jones v. Miami-Dade Cnty.*, No. 0320674CIV-ALTONAGA, 2005 WL 2456869, at *5 (S.D. Fla. Jul. 29, 2005) (citing *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997)). With regard to the third prong of a *prima facie* case of retaliation, "[t]o establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). A plaintiff must "at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney*, 120 F.3d at 1197. "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action

Case No. 10-61134-CIV-ALTONAGA/Simonton

was aware of the protected expression." *Jones*, 2005 WL 2456869, at *5. "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Id.*

In the instant case, it is undisputed Jennings meets the first two prongs of the *prima facie* case: (1) he engaged in a statutorily protected activity because he was a member of a Class Action settlement between Walgreens and its employees alleging discrimination, and (2) he suffered an adverse employment action when he was terminated on June 6, 2008. Walgreens contends, however, that Jennings does not satisfy the third prong of the analysis because Jennings has not demonstrated a causal connection between his termination and his participation in the Class Action.

Jennings asserts there is a causal connection between his termination and his protected activity, and claims that "[b]ut for the fact that [he] was a member and beneficiary of the class action filed, [he] would not have been terminated." (Pl.'s Resp. in Opp'n ("Resp.") 5 [ECF No. 63]). Nevertheless, Jennings does not present any evidence indicating Palermo — the District Manager at Walgreens who made the termination decision — was actually aware of Jennings's participation in the Class Action at the time Jennings was terminated.

In fact, in his deposition testimony, Jennings admits he has no evidence Palermo was aware Jennings was part of the Class Action. (*See* Jennings Dep. 97:16–19, 22–25). He also acknowledges a lack of evidence that anyone at Walgreens' Loss Prevention Department was aware Jennings was a class member or beneficiary of the Class Action. (*See id.* 97:16–19). Jennings merely alleges Walgreens "knew or should have known that [Jennings] was an African-American employee of Walgreens" and thus knew or should have known he was a member of

Case No. 10-61134-CIV-ALTONAGA/Simonton

the class.[5] (*Id.*). This allegation is insufficient to establish that the decision-maker who terminated Jennings was aware of the Class Action and of Jennings's membership in the class.[6] Thus, Jennings fails to establish a causal connection based on Walgreens' awareness of the protected activity.

Nonetheless, even where a plaintiff cannot establish actual awareness of the protected activity, the plaintiff can establish a causal connection, for the purpose of a *prima facie* case, based on close temporal proximity between the adverse action and the protected activity. Specifically, the Eleventh Circuit has held that because a plaintiff can establish a *prima facie* case merely by showing the protected activity and the adverse employment action are not wholly unrelated, temporal proximity can provide a sufficient nexus to establish causation. *See Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986). Jennings does allege there is close temporal proximity between his termination and his protected activity. In particular, Jennings claims he was terminated on the day the Class Action settlement was scheduled to be paid. (*See* SUMF ¶ 59).

However, the cases that accept mere temporal proximity as sufficient evidence of causality to establish a *prima facie* case of retaliation have held that the temporal proximity must

---

[5] Notably, Jennings himself did not even learn about the existence of the Class Action until November 2007, which was after the first two investigations were conducted and the final warnings issued. (*See* Jennings Dep. 93:3–8).

[6] "The causal link may also be established even [if] the individual who took the adverse action had no knowledge of the protected activity, if that individual simply 'rubberstamped' the recommendation of another individual who was aware of the protected activity." *Smalley v. Holder*, No. 09-21253-CIV, 2011 WL 649355, at *10 n.36 (S.D. Fla. Feb. 22, 2011). Here, Jennings has not identified any individual at Walgreens involved in the termination decision who was aware of Jennings's participation in the Class Action prior to his termination, and in any event, there is no indication that Palermo simply "rubberstamped" the recommendation of another individual when making his decision.

Case No. 10-61134-CIV-ALTONAGA/Simonton

be very close. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotations and citations omitted); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that a three to four month disparity between the statutorily protected expression and the adverse employment action is not enough) (collecting cases). Courts tend to find temporal proximity constitutes a sufficient nexus only where the adverse employment action is taken very shortly after the protected activity is initiated. *See, e.g.*, *Gross v. Culbro Corp.*, No. PCA 85-4193-RV, 1987 WL 46324, at *10 (N.D. Fla. Dec. 16, 1987) (finding nexus where plaintiff was terminated one day after employer received notice of the filing of lawsuit); *Cobb v. Syniverse Techs., Inc.*, 359 F. Supp. 2d 1287, 1290 (M.D. Fla. 2005) (finding causal connection satisfied where plaintiff was terminated thirteen days after filing EEOC claim); *Thompson v. City of Seminole City Council*, No. 8:05-cv-1316-T-24TGW, 2007 WL 2827579, at *12 (M.D. Fla. Sept. 26, 2007) (finding nexus where defendant was notified of lawsuit filed by plaintiff just a few days before plaintiff was terminated).

In the instant case, Jennings indicates the Class Action was filed in June 2005 and claims he was a member of the class since the Class Action's inception.[7] (*See* SDIMF ¶ 49). Thus, the lawsuit had been ongoing for nearly two years before Jennings was terminated. Accordingly, there is no close temporal proximity between the initiation of the protected activity and the adverse action. Furthermore, the close temporal proximity between Jennings's termination and the *time when the settlement was to be paid* is not particularly indicative of a causal connection

---

[7] Although he did not become aware of his status as a beneficiary of the Class Action until November 2007, Jennings claims he was a member of the class since the inception of the lawsuit. (*See* Pl.'s Resp. to Def.'s Second Set of Interrogatories 1 [ECF No. 62-1]).

Case No. 10-61134-CIV-ALTONAGA/Simonton

between the adverse action and the protected activity.

Moreover, even assuming Jennings did meet his burden for establishing a *prima facie* case, his claim still fails as he does not present evidence that Walgreens' legitimate non-discriminatory reason for his termination is pretextual. Once a plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Gupta*, 212 F.3d at 590. The employer's burden of rebuttal is "exceedingly light." *Tipton*, 872 F.2d at 1495. "Since the rebuttal burden is one of production only, the employer 'need not persuade the court that it was actually motivated by the profered [sic] reasons . . . . It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the [employee].'" *Jones*, 2005 WL 2456869, at *5 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)) (alterations in original). If the employer meets its burden of production, in order to defeat summary judgment the plaintiff must demonstrate a "genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action." *Raney*, 120 F.3d at 1196.

Walgreens has offered a legitimate non-discriminatory reason for terminating Jennings — namely, Jennings's continued violations of the Policy. The evidence shows, and Jennings does not dispute, that at least four employees — working at three different store locations under the supervision of three different store managers — accused Jennings of actions which constitute violations of the Policy. Jennings acknowledges that violating the Policy is a terminable offense. (*See* SDIMF ¶ 40). Still, Jennings contends Walgreens' stated reason for the termination is mere pretext. Notwithstanding Jennings's contention, the Court finds he fails to demonstrate a

Case No. 10-61134-CIV-ALTONAGA/Simonton

genuine factual issue as to whether Walgreens' proffered reason is pretextual.

First, Jennings admits that the only evidence of retaliation he presents is the fact that he was terminated the day the settlement was to be paid out to the class members. (*See* Jennings Dep.). While temporal proximity may be sufficient to satisfy the causal connection requirement of a *prima facie* case, it is not sufficient, by itself, to present a genuine factual issue as to whether Walgreens' stated reasons for terminating Jennings are pretextual. *See Reilly v. Novartis Pharm. Corp.*, No. 6:07-cv-230-Orl-19GJK, 2008 WL 795322, at *14 (M.D. Fla. Mar. 24, 2008) ("While temporal proximity may show that the protected activity was not wholly unrelated in the context of a *prima facie* case, such evidence does not on its own create a genuine issue of material fact of pretext."); *Ramirez v. Palm Tran, Inc.*, No. 07-81039 CIV, 2008 WL 4500649, at *5 (S.D. Fla. Oct. 1, 2008) (same).

In addition, although Jennings repeatedly contends the underlying harassment allegations are false, the validity of those allegations is not pertinent to the present inquiry. Walgreens claims to have terminated Jennings as a result of the sexual harassment allegations asserted against him by other employees. Whether or not Jennings actually harassed those employees is irrelevant. This is because "[t]he heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). This point was emphasized by the Eleventh Circuit in *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). In that case, the plaintiff alleged he was fired because of his age. The employer submitted evidence that it fired plaintiff after an investigation revealed he had sexually harassed co-workers. *See id.* at 1469. The plaintiff denied harassing anyone and a

Case No. 10-61134-CIV-ALTONAGA/Simonton

jury actually found in his favor. *See id.* Nonetheless, the Eleventh Circuit reversed the district court's order denying the employer's motion for a directed verdict, and explained:

> We must make an important distinction before proceeding any further. Much of [the plaintiff's] proof at trial centered around whether [the plaintiff] was in fact guilty of the sexual harassment allegations leveled at him by his former co-workers. We can assume for purposes of this opinion that the complaining employees interviewed by [the employer's relevant decision maker] were lying through their teeth. The inquiry . . . is limited to whether [the employer] believed [the plaintiff] was guilty of harassment, and if so, whether this belief was the reason behind [the plaintiff's] discharge. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 n.2 (11th Cir. 1989), *cert. den.*, 495 U.S. 935, 110 S.Ct. 2180, 109 L. Ed. 2d 508 (1990) (that the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong.).

*Id.* at 1470 (alterations added) (footnote call number omitted).

Therefore, whether Jennings was actually guilty of the alleged harassment is unimportant; the appropriate question is "whether [Walgreens] had a good faith belief that [Jennings] was guilty of the misconduct." *Jones*, 2005 WL 2456869, at *9. Jennings does not present any evidence indicating Walgreens did not have a good faith belief that Jennings harassed those employees. Nor does Jennings present any evidence that Walgreens gave inconsistent reasons for its actions. In fact, Walgreens performed an investigation each time Jennings was accused of violating the Policy. Walgreens conducted interviews of the complaining employees and gave Jennings an opportunity to respond to the allegations. Walgreens also issued two written warnings advising Jennings that any further violations of the Policy would result in his termination.

Because Jennings fails to present any evidence from which a reasonable jury could conclude that Walgreens' stated reasons for its actions were pretextual, he fails to rebut

13

Case No. 10-61134-CIV-ALTONAGA/Simonton

Walgreens' legitimate non-discriminatory reason for the termination.

### IV. CONCLUSION

In sum, Jennings fails to establish a *prima facie* case of retaliation or offer sufficient evidence to rebut Walgreens' proffered reason for Jennings's termination.  Therefore, Walgreens is entitled to summary judgment on Jennings's Title VII and FCRA claims.  Accordingly, it is

**ORDERED AND ADJUDGED** that Walgreens' Motion for Summary Judgment **[ECF No. 44]** is **GRANTED**.  Summary judgment is entered in favor of Defendant, Walgreen Co.  A final order of judgment will be entered pursuant to this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of April, 2011.

_____<br>
**CECILIA M. ALTONAGA**<br>
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record